# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–16–996

| | |
|---|---|
| PRODUCERS RICE MILL, INC.<br>APPELLANT | **Opinion Delivered:** April 12, 2017 |
| V. | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT<br>[NO. 01SCV–15–070ND] |
| RICE HULL SPECIALITY PRODUCTS, INC.<br>APPELLEE | HONORABLE DAVID G. HENRY, JUDGE |
| | REVERSED AND REMANDED |

## RITA W. GRUBER, Chief Judge

Appellant, Producers Rice Mill, Inc., brings this appeal from an order granting Rice Hull Specialty Products, Inc.'s, motion for summary judgment and dismissing appellant's petition for declaratory judgment regarding the parties' rights and obligations pursuant to an indemnity agreement. The circuit court found that the indemnity agreement did not apply to the factual situation before it and dismissed appellant's petition. We hold that there were genuine issues of material fact to be decided regarding appellee's obligation to indemnify appellant under the circumstances presented and regarding appellee's breach of its duty to add appellant as an additional insured to its general-liability insurance policy. Accordingly, we reverse the circuit court's order and remand for further proceedings.

Appellee, Rice Hull Specialty Products, Inc., is in the business of brokering sales of rice hulls, a rice byproduct, from various sources in the Southeastern United States. In July 2009, appellee and appellant, a rice-farmer cooperative, entered into an indemnity agreement in

SLIP OPINION

connection with brokerage services that were to be provided by appellee to appellant. The record has not been developed to detail the exact nature of the brokerage services forming the basis of the indemnity agreement. No testimony, affidavit, or written documentation explains the parties' obligations or duties in connection with their brokerage relationship.

The Indemnity Agreement, executed by the parties on July 24, 2009, provides in pertinent part as follows:

> WHEREAS, Producers has engaged Independent Contractor [Rice Hull] to perform certain services for Producers as an Independent Contractor;
>
> WHEREAS, Producers is only willing to engage Independent Contractor for such purposes provided Independent Contractor agrees to indemnify Producers as provided herein; and
>
> WHEREAS, Independent Contractor has agreed to indemnify Producers upon the terms set forth below.
>
> NOW THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto intending to be legally bound, AGREE AS FOLLOWS:
>
> 1. <u>INDEMNITY</u>. For and in consideration of the engagement of Independent Contractor by Producers to perform certain services for Producers as an independent contractor, Independent Contractor agrees to indemnify, defend and hold harmless Producers and its officers, directors, employees and agents (collectively, the "Indemnitees") from and against any and all suits, claims, causes of action, damages, losses, liabilities, obligations, costs or expenses (including reasonable attorney's fees) incurred by or asserted against any of the Indemnitees, directly or indirectly arising out of, relating to, or otherwise resulting in whole or in part from (a) any of the services or other activities performed for or on behalf of Producers by Independent Contractor or any officer, director, employee, agent, subcontractor, or affiliate of Independent Contractor, including, without limitation, any negligent or intentional act or omission by Independent Contractor or any officer, director, employee, agent, subcontractor, or affiliate of Independent Contractor in connection with such services or activities or (b) any breach of this agreement by Independent Contractor.

2. <u>INSURANCE</u>. Independent Contractor represents and warrants to Producers that Independent Contractor has and will maintain workers compensation insurance as required by law and general public liability and property damage insurance, with respect to the services and activities to be performed for Producers, in customary form with sound and reputable insurance companies . . . . Independent Contractor agrees to name Producers as an additional insured under their general liability policy and have the additional insured status reflected on the certificate of insurance.

The parties' dispute arose out of an accident that occurred on appellant's property in Greenville, Mississippi, on September 3, 2011. Sometime before the incident occurred, Abe Q Mills Trucking, Inc. (Abe Q), a shipping and freight company that occasionally purchased rice hulls, contacted appellee to purchase rice hulls. Although the precise nature of the contractual relationships between Abe Q, appellee, and appellant is not clear from the record, appellee appears to have "brokered" the sale of rice hulls from appellant to Abe Q. Isiah Moore, an employee of Abe Q, was sent to pick up the rice hulls; he was loading the rice hulls onto his truck at appellant's Greenville facility when he fell off the truck while attempting to secure the load with the truck's "short crank." Abe Q did not have workers' compensation insurance for this incident.

Mr. Moore subsequently filed a complaint in Mississippi against appellant and Abe Q, asserting that both were negligent and requesting compensatory and punitive damages. Mr. Moore's allegations against appellant included faulty maintenance and operation of its premises and inadequate evaluation, inspection, and maintenance to ensure that its premises were reasonably safe for invitees. Mr. Moore also made the following allegations against both Abe Q and appellant: (1) failure to warn him of the "dangers and/or risks" associated with loading and securing products; (2) failure to take proper precautions to evaluate, inspect, or advise

employees when loading and securing products onto trucks; (3) failure to train employees regarding the proper procedure for loading and securing products; and (4) failure to adhere to laws, rules, and guidelines set by "governmental and/or other agencies" prescribing procedures and guidelines for the safe loading and securing of products. Appellant's insurance carrier tendered defense of the claim to appellee's insurer, which refused to defend because appellee had failed to name appellant as an additional insured under its general liability policy as required under the parties' Indemnity Agreement.

On June 15, 2015, appellant filed a petition for declaratory judgment against appellee, alleging that appellee had a duty under their Indemnity Agreement to indemnify appellant for the loss it incurred in defending and settling the Moore lawsuit. Appellant also alleged that appellee breached the terms of the Indemnity Agreement by failing to indemnify appellant and failing to name appellant as an additional insured on its general liability policy. Appellant had settled the Moore lawsuit for $140,000 and expended $30,000 in defense costs. Appellant requested the court to enter judgment in its favor and against appellee by declaring (1) that appellee was required to indemnify, defend, and hold harmless appellant pursuant to the terms of the Indemnity Agreement and (2) that appellee had breached the agreement by failing to indemnify, defend, and hold harmless appellant in the Moore lawsuit.

Appellee filed an answer asserting, among other things, the affirmative defense that appellant's claim for indemnity arose from its own negligence and that the Indemnity Agreement did not require appellee to indemnify appellant for appellant's own acts of negligence. The parties then filed cross-motions for summary judgment. Appellee argued that

the underlying complaint in the Moore lawsuit did not allege any negligent acts or omissions by appellee; that the Indemnity Agreement did not extend coverage to appellant for its own acts of negligence; and that appellee's general liability insurance policy, which would have been applicable to appellant had appellant been added as an insured, would not have applied in this situation because the Moore complaint did not allege any negligent acts or omissions by appellee.

Appellee attached the affidavit of John Moore, its president, who stated that appellee instructed its insurance provider to add appellant as an additional insured but that the provider failed to do so. He also stated that Abe Q had contacted appellee "to purchase rice hulls on behalf of Abe Q and its own client." He concluded with the following two statements: "8. Besides the original sale to Abe Q, Rice Hull had no involvement with the scheduled pickup at Producers' Greenville, Mississippi, facility on September 3, 2011, where the incident occurred . . . . 9. Therefore, neither Abe Q nor Producers was acting on behalf of Rice Hull."

Appellee also attached the affidavit of Harold Roberts, a vice president of appellee's insurance provider at all relevant times. Mr. Roberts attached to his affidavit the general liability insurance policy and the applicable additional-insured endorsement that he stated "would have been applicable had the request been submitted and approved through Penn Miller's underwriting process." The endorsement provided as follows:

> **Section II – Who is an Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting

SLIP OPINION

on your behalf:

A. In the performance of your ongoing operations; or

B. In connection with your premises owned by or rented to you.

In its response and cross-motion for summary judgment, appellant argued that the broad language in the indemnity provision applied because Mr. Moore alleged that he was injured by the negligence of both Abe Q and appellant, and the indemnity provision applied and required appellee to indemnify appellant even if appellant contributed to the accident, so long as appellee or its "subcontractors" contributed in any way to the harm. Appellant also argued that appellee breached the Indemnity Agreement by failing to add appellant as an additional insured, claiming that the endorsement would have required appellee's insurance carrier to defend appellant in the Moore lawsuit. Appellant contended that Abe Q was acting on appellee's behalf in loading the shipment of rice hulls.

The circuit court entered its order on July 7, 2016, granting appellee's motion for summary judgment and dismissing appellant's petition. The court found that the parties had entered the Indemnity Agreement as "part of their business relationship" and that Abe Q had then contacted appellee to purchase rice hulls that were to be picked up at appellant's Greenville facility. The court found that the Indemnity Agreement did not require appellee to defend or indemnify appellant under the circumstances presented, noting that the Moore complaint failed to allege any acts of negligence against appellee; that appellee was not involved in the pickup or handling of the rice hulls at appellant's facility; and that, while it recognized that the language in the Indemnity Agreement was "quite broad," it was not sufficiently specific to indemnify appellant for appellant's own acts of negligence. Thus, the

6

court concluded, the indemnity provision did not apply. The court also found that the "additional insured" endorsement would not have provided coverage in this case because it applied only if Moore's injuries were "caused, in whole or in part, by [appellee's] acts or omissions or the acts or omissions of those acting on [appellee's] behalf." The court reasoned that, because the Moore complaint did not allege that appellee was negligent and because Abe Q purchased the rice hulls for "its own account" and not for appellee, it was not acting as appellee's subcontractor and the endorsement was therefore not applicable.

The issue on appeal is whether summary judgment was appropriate in this case. Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Gallas v. Alexander*, 371 Ark. 106, 263 S.W.3d 494 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Stromwall v. Van Hoose*, 371 Ark. 267, 265 S.W.3d 93 (2007). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. *Town of Gilbert v. Fruehauf*, 2013 Ark. App. 17, at 2–3, 425 S.W.3d 816, 817. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* at 3, 425 S.W.3d at 817. Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Id.*



I. *Indemnity*

We turn first to section 1 of the Indemnity Agreement. As the circuit court recognized, this provision is extremely broad. But the parties agree that the provision does not indemnify appellant for its own acts of negligence. *See United Sys. of Ark., Inc. v. Beason & Nailey, Inc.*, 2014 Ark. App. 650, at 4–5, 448 S.W.3d 731, 734 (holding that mere general, broad, and seemingly all-inclusive language is not sufficient to impose liability for an indemnitee's own negligence; to impose such liability, the language must be "in unmistakable terms" to the extent that no other meaning can be ascribed). Appellant does dispute, however, that this is the end of the inquiry. The circuit court found that the Moore complaint did not allege any negligence against appellee and that appellee was not liable for appellant's negligence. Thus, the court concluded that the parties' indemnity provision was not applicable and that there were no genuine issues of material fact to be litigated. We agree with appellant that this was not the end of the inquiry.

The language of the indemnity provision does not apply only to the negligent acts of appellee. It requires appellee to indemnify appellant for "any and all suits, claims, causes of action, damages, losses, liabilities, obligations, costs or expenses" incurred by appellant "directly or indirectly arising out of, relating to, or otherwise resulting in whole or in part from (a) any of the services or other activities performed for or on behalf of [appellant] by [appellee.]" Although the sentence following that broad statement makes clear that it includes, "without limitation, any negligent or intentional act or omission" by appellee, its employees, agents, subcontractors, or affiliates "in connection with such services or activities," it does not

limit indemnification to appellee's acts of negligence. Viewing the evidence in the light most favorable to appellant and resolving all doubts and inferences against appellee, as we must, we hold that there remain genuine issues of material fact to determine whether the indemnity provision applies in the circumstances of this case. One such issue is the exact nature of the "services or other activities" provided to appellant by appellee and whether those services include Mr. Moore's pickup of the rice hulls. In addition, whether appellant's negligence was the sole cause of the accident remains a question of fact because the indemnity provision applies to losses "directly or indirectly arising out of, relating to, or otherwise resulting in whole *or in part*" from appellee's services to appellant. The fact that a party to a lawsuit enters into a settlement agreement, particularly where there are several defendants, is not conclusive proof that the party was negligent or, if negligent, the sole cause of an accident. There are many reasons to settle a lawsuit other than a party's admission of responsibility. The record does not demonstrate that appellant's alleged negligence was the sole cause of Mr. Moore's injuries and, thus, of appellant's loss. This remains an issue of material fact.

## II. *Insurance*

We also hold that there remain genuine issues of material fact regarding whether the additional-insured endorsement would have applied to the Moore lawsuit and, thus, whether appellee's breach of the Indemnity Agreement damaged appellant. The circuit court found that the endorsement would not have applied because the injury was not "caused, in whole or in part," by appellee and that Abe Q was not a subcontractor and thus not acting on appellee's "behalf." Mr. Moore, appellee's president, stated that Abe Q purchased the rice

9

hulls from appellee, not from appellant. While Mr. Moore also stated that Abe Q was purchasing the rice hulls for "its own account," suggesting that the rice hulls were not going to be used by appellee, this does not answer the question regarding whether Abe Q was acting "on behalf of" appellee. The injury occurred when Abe Q was picking up the rice hulls from appellant. The evidence is unclear but suggests that appellee purchased and paid for the rice hulls that Abe Q picked up. The evidence in the record does not conclusively establish the contractual relationships between the parties for this particular transaction, and thus, factual questions remain regarding whether Abe Q was acting "on behalf" of appellee at the time of the accident. There is also a question of fact regarding what constitutes the "performance of [appellee's] ongoing operations." Again, the evidence does not indicate the precise relationship, obligations, and duties that existed between appellant, appellee, and Abe Q. We hold that genuine issues of material fact remain regarding whether the applicable endorsement would have applied in this case. Accordingly, we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

VIRDEN and WHITEAKER, JJ., agree.

*Franden Farris Quillin Goodnight & Roberts*, by: *Jason Goodnight*, for appellant.

*Williams & Anderson PLC*, by: *David M. Powell* and *Alec Gaines*, for appellee.